863 So.2d 1180 (2003)
David BAUTISTA, Petitioner,
v.
STATE of Florida, Respondent.
No. SC02-2121.
Supreme Court of Florida.
December 4, 2003.
*1181 Carey Haughwout, Public Defender, and David John McPherrin, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Celia Terenzio, Bureau Chief, West Palm Beach, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, FL, for Respondent.
BELL, J.
We have for review Bautista v. State, 832 So.2d 122 (Fla. 4th DCA 2002), in which the Fourth District Court of Appeal certified the following question as one of great public importance:
DOES THE "A/ANY" TEST ADOPTED IN GRAPPIN V. STATE AND STATE V. WATTS AS THE METHOD FOR DETERMINING THE UNIT OF PROSECUTION FOR THE COMMISSION OF MULTIPLE PROSCRIBED ACTS IN THE COURSE OF A SINGLE EPISODE, PRECLUDE MULTIPLE CONVICTIONS FOR DUI MANSLAUGHTER WHERE MORE THAN ONE DEATH OCCURS IN A SINGLE ACCIDENT AS APPROVED IN MELBOURNE V. STATE?

Bautista, 832 So.2d at 125.[1] We have rephrased the question to be:
DOES THE "A/ANY" TEST ADOPTED IN GRAPPIN V. STATE AND STATE V. WATTS PRECLUDE MULTIPLE CONVICTIONS OF DUI MANSLAUGHTER WHERE MULTIPLE DEATHS OCCUR IN A SINGLE DUI CRASH?
For the reasons stated below, we answer the certified question in the negative and hold that multiple convictions of DUI manslaughter may arise from multiple deaths in a single DUI crash.

I. BACKGROUND
David Bautista was driving under the influence of alcohol when his vehicle collided with another car, fatally injuring its two occupants.[2] He was convicted on two *1182 counts of DUI manslaughter. Bautista appealed, arguing that since the DUI manslaughter statute penalizes the killing of "any human being" rather than "a human being," the statute does not authorize multiple convictions based on two deaths arising from a single DUI incident. Relying on Melbourne v. State, 679 So.2d 759 (Fla. 1996), where this Court held that multiple convictions arising from a single DUI incident did not violate double jeopardy principles, the Fourth District Court of Appeal affirmed the convictions. The district court concluded that Bautista's claim, although not based on the principle of double jeopardy, was nonetheless foreclosed by this Court's language in Melbourne.

II. DISCUSSION
The DUI manslaughter statute, section 316.193(3)(c)(3), Florida Statutes (2002), provides:
Any person:
(a) Who is in violation of subsection (1) [driving under the influence];
(b) Who operates a vehicle; and
(c) Who, by reason of such operation, causes or contributes to causing:
....
3. The death of any human being commits DUI manslaughter ....

Id. (emphasis added).
Relying on the "a/any" test developed in Grappin v. State, 450 So.2d 480 (Fla.1984), and State v. Watts, 462 So.2d 813 (Fla. 1985), Bautista argues that because the adjective "any" modifies "human being" in the statute, the killing of multiple persons in a single DUI incident constitutes a single offense of DUI manslaughter.

A. The "A/Any" Test
To properly resolve the certified question, we must first trace the history and purpose behind the "a/any" test. In Grappin, we were confronted with a decision of the Second District Court of Appeal that was in direct conflict with decisions from two other district courts of appeal. The issue presented was the Legislature's intended unit of prosecution for the theft of a firearm under subsection (2)(b)(3) of Florida's general theft statute. § 812.014, Fla. Stat. (1979). Employing what it called "a common sense reading of the plain language of section 812.014(2)(b)," the Second District determined that such a reading demonstrates "that the legislature unmistakably intended for the simultaneous unlawful taking of more than one firearm to be subject to a separate prosecution." State v. Grappin, 427 So.2d 760, 763 (Fla. 2d DCA 1983) (emphasis added), approved, 450 So.2d 480 (Fla.1984).
Section 812.014(2)(b), Florida Statutes (1979), read as follows:
(b) It is grand theft of the second degree and a felony of the third degree... if the property stolen is:
1. Valued at $100 or more, but less than $20,000.
2. A will, codicil, or other testamentary instrument.
3. A firearm.
4. A motor vehicle.
5. Any member of the genus Bos (cattle) or the genus Equus (horse), or any hybrid of the specified genera.
6. Any fire extinguisher.
7. Any amount of citrus fruit consisting of 2,000 or more individual pieces of fruit.
(Emphasis added.) The Second District noted that the Legislature's enactment "prefaced the respective item of property in parts 2 through 4 of subsection (2)(b) with the article `a'.... In contrast, it prefaced the respective object of property in parts 5 through 7 with the article `any.'" Grappin, 427 So.2d at 762-63. The Second District believed the Legislature's differing use of "a" and "any" was intentional. It stated:
We do not believe that the legislature inadvertently inserted different articles *1183 in parts 2 through 4 and 5 through 7. In our view, the legislature's use of the article "a" in parts 2 through 4 reveals its recognition of the distinction in meaning between the articles "any" and "a" for purposes of establishing the permissible unit of prosecution. In other words, its use of different articles signifies its intent, with respect to simultaneously pilfered firearms ... to treat separately each stick in the bundle.
Grappin, 427 So.2d at 763 (footnote omitted)(emphasis added). The Second District buttressed its determination of legislative intent in two ways. First, it looked at the overall statutory scheme relative to firearms. It found that firearms are subject to strict, comprehensive statutory regulation and that in light of the "strong policy considerations" within this statutory scheme, "it is unreasonable to presume that the legislature intended to make simultaneously stolen firearms (or motor vehicles or testamentary instruments) cheaper by the dozen." State v. Grappin, 427 So.2d at 763. Secondly, the Second District looked at related cases. It cited several federal cases interpreting the intended unit of prosecution under federal firearm statutes that used either "a" or "any."
We acknowledged the Second District's use of a common-sense approach in its interpretation of this statute and approved its decision. In fact, we employed the same common-sense approach in our own interpretation. We acknowledged that the Legislature must fix the punishment for violation of statutes clearly and without ambiguity. If there is ambiguity, we said that the rule of lenity applies to resolve the ambiguity against turning a single transaction into multiple offenses. But we also stated that "[w]here legislative intent as to punishment is clear ... the rule of lenity does not apply." Grappin, 450 So.2d at 482. To reach a common sense interpretation of the legislatively intended unit of prosecution, we used the same basic analysis as the Second District. First, we looked at the various uses of "a" and "any" within the statute itself. Next, we looked at our prior interpretation of the same statute in State v. Getz, 435 So.2d 789 (Fla.1983). Lastly, we looked at decisions of other courts. We looked at federal court cases faced with similar questions of statutory interpretation. As did the Second District, we found that our construction was consistent with federal circuit court decisions construing similar federal statutes that used either "any" firearm or "a" firearm. Ultimately, by applying this common-sense approach to statutory interpretation, we found "that the use of the article `a' in reference to `a firearm' in section 812.014(2)(b)3 clearly shows that the legislature intended to make each firearm a separate unit of prosecution." Grappin, 450 So.2d at 482.
Eight months after Grappin, we applied the a/any test in Watts and held that a prisoner could only be charged with one count of possession of contraband based on his possession of two prison-made knives discovered in his cell at the same time. Watts, 462 So.2d at 814. The contraband statute in Watts prohibited possession by an inmate of "[a]ny firearm or weapon of any kind." 462 So.2d at 814 (quoting section 944.47, Florida Statutes (1981)).[3] In *1184 the Watts opinion, even though a completely different statute was at issue, there is no discussion of the common-sense approach to statutory interpretation employed in Grappin to determine the legislatively intended unit of prosecution. The Watts opinion simply extrapolates the a/any distinction specifically derived from section 812.041(2)(b) to a wholly unrelated statute. The prison contraband statute contained no variant uses of "a" or "any" before the prohibited items of property. Section 944.47 consistently used "any" before each item listed. So, unlike section 812.041(2)(b), within section 944.47 itself there was no clear expression of legislative intent as to the unit of prosecution. Unlike the Grappin decision, the Watts opinion does not discuss either the overall statutory scheme relative to contraband, the public policy behind the statute, or how other courts have interpreted similar statutes.
Therefore, when the Watts opinion stated that it was "applying the rationale of Grappin to" section 944.47, it actually was only applying a portion of the Grappin rationale. Watts, 462 So.2d at 814. There was no effort to find the legislatively intended unit of prosecution. Only the syntactical distinction between "a" and "any" was used to find ambiguity and thus apply the rule of lenity. Consequently, applying only the a/any rationale of Grappin, we held that the use of "any" created an ambiguity as to the intended unit of prosecution and this ambiguity precluded the State from charging multiple counts based on the defendant's simultaneous possession of multiple items of contraband. Watts, 462 So.2d at 814.
Twelve years later in Wallace v. State, 724 So.2d 1176 (Fla.1998), we held that a defendant who resisted two officers during a single incident could be charged with only one crime because the statute prohibited resisting "any" officer. Id. at 1181. We analyzed the language of section 843.01, Florida Statutes (1993), which provides:
Whoever knowingly and willfully resists, obstructs, or opposes any officer ... in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third *1185 degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Id. (emphasis added). We ultimately determined that the case should be resolved in accordance with our decisions in Grappin and Watts. In reaching this conclusion, we relied in part on the United States Supreme Court's analysis of a similar federal resisting arrest statute. Wallace, 724 So.2d at 1179 (citing Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958)). Ladner had permitted only one offense regardless of the number of officers affected. We explained the Court's conclusion in Ladner as follows: "Because the meaning of the statute could not be discerned from the wording of the statute or its legislative history, the Court construed the statute in favor of the accused individual." Wallace, 724 So.2d at 1180. We also noted that Ladner reached its result because the Court concluded that the statute's "primary purpose was to prevent the hindrance of government duty, and not to prevent assault upon federal officers." Id. at 1179. We found that the Florida Legislature had a similar purpose in enacting section 843.01. Noting that chapter 843 is entitled "Obstructing Justice," we concluded that this context indicated a legislative focus on the obstruction of justice by resisting arrest and not just the physical protection of law enforcement officers. Wallace, 724 So.2d at 1180. Essentially, our analysis of the statutory language and related case law in Wallace led us to conclude that "[a]t the very least, under the analysis in the cases set out above, the language and purpose of the statute is ambiguous and susceptible to different interpretations." Wallace, 724 So.2d at 1180 (emphasis added). Within this context, we held that a continuous resistance to an ongoing attempt to effect an arrest constitutes only a single "instance of obstruction" under section 843.01, Florida Statutes. Wallace, 724 So.2d at 1180-81. We applied the rule of lenity because the language and the purpose of the statute did not indicate a clear legislative intent to permit separate prosecutions of resisting separate police officers during one episode.[4]

B. DUI Manslaughter A Homicide Offense
Applying the same common-sense approach to statutory interpretation that we used in Grappin to the DUI manslaughter statute at issue in this case, we believe that the Legislature clearly intended to permit multiple convictions based on multiple deaths arising from a single DUI incident.
Our purpose in construing a statutory provision is to give effect to legislative intent. Legislative intent is the polestar that guides a court's statutory construction analysis. State v. J.M., 824 So.2d 105, 109 (Fla.2002). In attempting to discern legislative intent, we first look to the actual language used in the statute. Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000). If the statutory language is unclear, we apply rules of statutory construction and explore legislative history to determine legislative intent. Id.; Weber v. Dobbins, 616 So.2d 956, 958 (Fla.1993). "To discern legislative intent, courts must consider the statute as a whole, including the evil to be corrected, the language, title, and history of its enactment, and the state of law already in existence on the statute." State v. Anderson, 764 So.2d 848, 849 (Fla. 3d *1186 DCA 2000) (citing McKibben v. Mallory, 293 So.2d 48, 52 (Fla. 1974)).
Despite its inclusion in chapter 316 with motor vehicle offenses, DUI manslaughter falls within the general category of homicide offenses. See Houser v. State, 474 So.2d 1193, 1196 (Fla.1985) (stating that the statutory element of the death of a victim places DUI manslaughter "squarely within the scope of this state's regulation of homicide"); McHugh v. State, 160 Fla. 823, 36 So.2d 786, 787 (1948) (stating that the "gist" of the DUI manslaughter offense is "unlawful homicide"). The first enactment of the DUI manslaughter statute in 1923 provided that violations of the statute were to "be punished as provided by existing law relating to manslaughter." Ch. 9269, § 1, Laws of Fla. (1923). Prior to the 1923 legislation, there was no specific Florida statute dealing with manslaughter arising from the operation of motor vehicles, and these cases were prosecuted under the general manslaughter statute, which has existed, essentially in its present form, since 1868. The first manslaughter statute was enacted in 1868. It defined the offense as the killing of "one human being."[5] When the homicide statute was revised in 1892, manslaughter was defined as the killing of "a human being."[6] This statutory language, which has remained unchanged since 1892,[7] indicates a clear legislative intent that the offense of manslaughter should be punished based on the number of victims rather than by reference to the particular act leading to the deaths.
Homicide statutes traditionally and uniformly impose punishment for each death caused by a defendant's criminal conduct. See, e.g., Lovette v. State, 636 So.2d 1304, 1305-06 (Fla.1994) (affirming three first-degree murder convictions where codefendants killed three people during a robbery); Rosier v. State, 343 So.2d 972, 973 (Fla. 1st DCA 1977) (permitting five counts of manslaughter by culpable negligence where five victims were killed in a single automobile crash). Homicides are punished based on the number of victims because the legislative purpose behind homicide statutes is to safeguard the lives of individuals. The Florida Legislature was guided by this purpose in enacting the DUI manslaughter statute; the unambiguous aim of the statute is to ensure the safety of individual citizens. Therefore, the gravamen of the offense of DUI manslaughter is not a traffic violation, but the killing of a human being. See Cannon v. State, 91 Fla. 214, 107 So. 360, 362 (1926) (stating that the felony of DUI manslaughter "lies not in driving of an automobile negligently while intoxicated... but in the killing of a person").
Our understanding of the Legislature's intent is buttressed by our decision in *1187 Melbourne where we rejected a double jeopardy challenge to multiple convictions for DUI manslaughter arising out of a single DUI incident. Melbourne, 679 So.2d at 765. The defendant in Melbourne killed two people and injured a third while driving under the influence. Id. Based on these facts, we upheld the defendant's convictions on two counts of DUI manslaughter and one count of DUI with serious bodily injury. Id. We reasoned that a "DUI driver may sustain multiple convictions because the violation causes injury to each victim." Id.
Our decision today is controlled by the same understanding of legislative intent reflected in our decision in Melbourne. As stated above, we believe that the Legislature clearly intended to allow separate convictions of DUI manslaughter for each death that occurs in a single DUI episode. It was this same understanding that enabled us to reject the double jeopardy challenge raised in Melbourne. See Boler v. State, 678 So.2d 319, 321 (Fla.1996) (explaining that the dispositive question in a double jeopardy analysis is the determination of legislative intent).
Our understanding of legislative intent regarding DUI manslaughter has not changed since Melbourne. The legislative intent is to allow separate convictions for each victim. This understanding comports with the uniform authority of Florida case law interpreting the DUI manslaughter statute. See McHugh v. State, 160 Fla. 823, 36 So.2d 786, 787 (1948) (stating that the great weight of authority supports the view that under the DUI manslaughter statute "[t]here is an offense for each unlawful homicide"); State v. Wright, 546 So.2d 798, 799 n. 2 (Fla. 1st DCA 1989) (stating that the prosecution of multiple counts of DUI manslaughter arising from a single DUI incident is commonplace and not open to serious question); Pulaski v. State, 540 So.2d 193, 194 (Fla. 2d DCA 1989) (stating that "one count of manslaughter is permissible for each death sustained during a drunk driving episode"); State v. Naumowicz, 535 So.2d 702, 702 (Fla. 1st DCA 1988) (permitting separate counts of DUI manslaughter based on separate deaths in a single DUI incident); State v. Lowe, 130 So.2d 288, 289 (Fla. 2d DCA 1961) (holding that "where two or more persons are killed by a single [DUI crash], there are as many separate and distinct offenses as there are persons killed by the unlawful act").
Applying a common-sense approach to the DUI manslaughter statute leads to one inexorable conclusion. Any reasonable consideration of the language of the statute, the history of its enactment, the uniform statutory treatment of manslaughter offenses, and the case law in existence makes it clear that the legislative intent is that each death caused in a DUI crash is to be charged and punished as a separate offense.

C. DUI Manslaughter and the A/Any Test
The a/any test does not compel a contrary determination of the Legislature's intended unit of prosecution for the offense of DUI manslaughter. Bautista's argument based on the a/any test succeeds only if we were to apply the test as a simple syntactical rule in isolation from the context in which the test arose. However, it would be improper to so isolate this distinction.[8] As discussed earlier, the *1188 a/any distinction was used in Grappin as one part of a common sense application of well-established rules of statutory interpretation, including reference to the overall statutory scheme and purpose as well as to related cases. Within this context, the a/any test is a valid linguistic tool that is helpful in establishing the Legislature's intended unit of prosecution. However, the a/any test is not an infallible or exclusive indicator of legislative intent.[9] Rather, absent clear legislative intent to the contrary, the a/any test serves as a valuable but nonexclusive means to assist courts in determining the intended unit of prosecution.
We acknowledge that our decision in Watts, while reaching the correct result, might appear to apply the a/any test mechanistically. We applied the a/any test in that case because there was no clear evidence of legislative intent to permit multiple units of prosecution. However, Grappin and its progeny should not be interpreted to suggest that the intended unit of prosecution is automatically rendered ambiguous whenever a statute uses the word "any." In the DUI manslaughter statute, the intent of the Legislature is clear. And since our purpose in construing a statutory provision is to give effect to legislative intent, the unit of prosecution in DUI manslaughter cases must be the number of victims killed-not the number of DUI traffic violations. The a/any test should not be applied to create an ambiguity where none exists and then to reach a result contrary to clear legislative intent.
We therefore hold that the a/any test adopted in Grappin does not preclude multiple convictions of DUI manslaughter where multiple deaths occur in a single DUI crash.
We decline to address Bautista's collateral argument regarding the enhancement of his convictions for failure to render aid because this issue is outside the scope of the certified question and the Fourth District Court of Appeal did not rule on the issue. See Major League Baseball v. Morsani, 790 So.2d 1071, 1080 n. 26 (Fla.2001) (stating that this Court generally declines to review issues which are outside the scope of a certified question and which have not passed jurisdictional muster).

III. CONCLUSION
For the reasons stated above, we answer the certified question in the negative and approve the decision of the Fourth District Court of Appeal.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., concur.
NOTES
[1] We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
[2] Bautista also fled the scene of the accident without rendering aid to the passengers or providing information to the responding police officers. Both counts of DUI manslaughter were charged as first-degree felony DUI manslaughter under section 316.193(3)(c)(3)(b), Florida Statutes (2002).
[3] 944.47 Introduction, removal, or possession of certain articles unlawful; penalty.

(1)(a) Except through regular channels as authorized by the officer in charge of the correctional institution, it is unlawful to introduce into or upon the grounds of any state correctional institution, or to take or attempt to take or send therefrom, any of the following articles which are hereby declared to be contraband for the purposes of this section, to wit:
1. Any written or recorded communication or any currency or coin given or transmitted, or intended to be given or transmitted, to any inmate of any state correctional institution.
2. Any article of food or clothing given or transmitted, or intended to be given or transmitted, to any inmate of any state correctional institution.
3. Any intoxicating beverage or beverage which causes or may cause an intoxicating effect.
4. Any narcotic, hypnotic, or excitative drug or any drug of whatever kind or nature including, but not limited to, a nasal inhalator of any variety, a sleeping pill, a barbiturate of any variety, and a controlled substance as defined in s. 893.02(3).
5. Any firearm or weapon of any kind or any explosive substance.
(b) It is unlawful to transmit or attempt to transmit to, or cause or attempt to cause to be transmitted to or received by, any inmate of any state correctional institution any article or thing declared by this subsection to be contraband, at any place which is outside the grounds of such institution, except through regular channels as authorized by the officer in charge of such correctional institution.
(c) It is unlawful for any inmate of any state correctional institution or any person while upon the grounds of any state correctional institution to be in actual or constructive possession of any article or thing declared by this section to be contraband, except as authorized by the officer in charge of such correctional institution.
(2) Whoever violates any provision of this section is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[4] As stated earlier, the rule of lenity does not apply where legislative intent as to punishment is clear. Grappin, 450 So.2d at 482 (citing Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958)). The following discussion explains that we find the legislatively intended unit of prosecution for DUI manslaughter clear.
[5] In 1868, the Florida Legislature codified the common law of homicide. Ch. 1637, Laws of Fla. (1868). The statute set out a general definition of manslaughter: "The killing of one human being, by the act, procurement, or omission of another, in cases where such killing shall not be murder, according to the provisions of this chapter, is either justifiable or excusable homicide or manslaughter." Id. ch. III, § 3.
[6] In 1892, the Legislature revised and consolidated the homicide statute. Degrees of manslaughter were eliminated, and certain common-law manslaughters (misdemeanor manslaughter, heat of passion killings, involuntary killing of a trespasser, and killing through negligence) were no longer specifically listed in the statute but became subsumed within the general definition of manslaughter. The general definition was amended to read: "The killing of a human being by the act, procurement, or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide or murder ... shall be deemed manslaughter...." § 2384, Fla.Rev.Stat. (1892).
[7] See § 782.07, Fla. Stat. (2002).
[8] In attempting to discern the intent behind a statutory term, courts should not mechanistically rely on a single tool but must use all available tools of interpretation. See United States v. Dickerson, 310 U.S. 554, 562, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940) (stating that "[t]he meaning to be ascribed to [a legislative act] can only be derived from a considered weighing of every relevant aid to construction").
[9] In fact, only if the criminal statute in question uses the article "a" is the legislative intent as to the intended unit of prosecution actually determined by the a/any test. This is because the use of the article "a" is unambiguous. If the adjective "any" is used, an ambiguity of legislative intent arises. Instead of using the traditional tools for determining legislative intent, the a/any test simply applies the rule of lenity to this ambiguity and precludes more than one unit of prosecution. This latter result avoids determining legislative intent rather than ascertaining that intent.