906 So.2d 368 (2005)
Patrick McKNIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-1261.
District Court of Appeal of Florida, Fifth District.
July 22, 2005.
*369 James S. Purdy, Public Defender, and Leonard R. Ross, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
The issue we must resolve is whether the proscriptions against double jeopardy prohibit multiple convictions of first-degree vehicular homicide under section 782.071(1)(b), Florida Statutes (2001), for the death of each victim involved in a single accident caused by the defendant who subsequently fled the accident scene and failed to render aid to the victims.[1]
*370 We will not belabor the facts, which are especially tragic for the victims and their families. For purposes of the issue we must resolve, suffice it to say that McKnight was pulled over for a cracked windshield and consented to the officer's request to search both McKnight and the vehicle. At some point McKnight became uncooperative and suddenly left the scene in his vehicle. A pursuit ensued during which McKnight ran a red light and caused a collision with another vehicle. Two occupants of the other vehicle were killed and a third occupant was seriously injured. After the collision, McKnight got out of his vehicle and fled on foot. He was subsequently apprehended and arrested.
McKnight was charged with several offenses, but the two with which we are concerned here are the counts charging vehicular homicide for the deaths of each victim. Each of the two counts was charged as a first-degree felony under section 782.071(1)(b), Florida Statutes (2001), because McKnight failed to render aid to the victims. The case was tried, the jury found McKnight guilty as charged of both counts, and he was sentenced to two concurrent 30-year terms of imprisonment.[2] McKnight now contends that the prohibition against double jeopardy was violated when he was convicted of both counts of first-degree vehicular homicide.
The State argues that McKnight waived the double jeopardy argument because he did not raise it in the trial court. We reject that argument. Absent a knowing and voluntary waiver, which may occur when a defendant enters into a negotiated plea agreement with the state for a specific sentence, a violation of double jeopardy is fundamental error that may be raised for the first time on appeal. Novaton v. State, 634 So.2d 607 (Fla.1994); Safrany v. State, 895 So.2d 1145 (Fla. 2d DCA 2005); Hunsicker v. State, 881 So.2d 1166 (Fla. 5th DCA 2004), review denied, 894 So.2d 970 (Fla.2005). There is no such waiver here and, therefore, we will proceed to resolve the double jeopardy issue.
"Three basic protections emanate from the Double Jeopardy Clauses of the Federal and Florida Constitutions: 1) protection against a subsequent prosecution for the same offense after acquittal; 2) protection against a subsequent prosecution for the same offense after conviction; and 3) protection against multiple punishments for the same offense." Hunsicker, 881 So.2d at 1169 (citations omitted). McKnight's double jeopardy claim is based on the third category. In instances where the third category is implicated and multiple convictions are based on violations of different statutes, the courts apply the "same elements" test enunciated in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), now codified in section 775.021(4), Florida Statutes (2001), to determine whether a double jeopardy violation has occurred. Cruller v. State, 808 So.2d 201 (Fla.2002); Gordon v. State, 780 So.2d 17 (Fla.2001); M.P. v. State, 682 So.2d 79 (Fla.1996).[3] However, *371 McKnight was charged and convicted of two violations of the same statute arising out of a single accident. In cases involving multiple violations of the same statute, the "same elements" test does not apply.[4] In this instance, the courts apply the "allowable unit of prosecution" standard to determine whether a double jeopardy violation has occurred. Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); Bautista v. State, 863 So.2d 1180 (Fla.2003); Wallace v. State, 724 So.2d 1176 (Fla.1998); Grappin v. State, 450 So.2d 480 (Fla.1984).
The "allowable unit of prosecution" standard recognizes that the Double Jeopardy Clauses are offended if multiple punishments are imposed for the same offense. The Legislature defines whether offenses are the same by prescribing the "allowable unit of prosecution," which is the aspect of criminal activity that the Legislature intended to punish. See United States v. Chipps, 410 F.3d 438 (8th Cir. 2005). In other words, it is a distinguishable discrete act that is a separate violation of the statute. The discovery of the allowable unit of prosecution is a task of statutory construction. Bautista; Wallace. If the Legislature fails to establish the unit of prosecution clearly and without ambiguity, we must resolve any doubt as to legislative intent by application of the rule of lenity. Bautista; Wallace; Grappin.
To discern legislative intent, we must apply a common-sense approach which requires that we consider the statutory language, the purpose of the statute, the evil to be corrected, the legislative history, and the pertinent case law that has applied the statute or similar enactments. Bautista, 863 So.2d at 1186 ("`To discern legislative intent, courts must consider the statute as a whole, including the evil to be corrected, the language, title, and history of its enactment, and the state of law already in existence on the statute.'") (quoting State v. Anderson, 764 So.2d 848, 849 (Fla. 3d DCA 2000)). Included within the ambit of this commonsense approach is the "a/any test," which is a "valuable but nonexclusive means to assist courts in determining the intended unit of prosecution." Bautista, 863 So.2d at 1188; see also Wallace; Grappin; Marin v. State, 684 So.2d 859 (Fla. 5th DCA 1996). When the article "a" is used by the Legislature in the text of the statute, the intent of the Legislature is clear that each discrete act constitutes an allowable unit of prosecution. Bautista; Bryan v. State, *372 865 So.2d 677 (Fla. 4th DCA 2004). Use of the adjective "any" indicates an ambiguity that may require application of the rule of lenity. Bautista.
We look first to the language of the vehicular homicide statute. Section 782.071, Florida Statutes (2001), provides:
"Vehicular homicide" is the killing of a human being, or the killing of a viable fetus by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another.
(1) Vehicular homicide is:
(a) A felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(b) A felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if:
1. At the time of the accident, the person knew, or should have known, that the accident occurred; and
2. The person failed to give information and render aid as required by s. 316.062.
This paragraph does not require that the person knew that the accident resulted in injury or death.
Based on our examination of the language of this statute, we conclude that the legislative intent is clear that the death of each victim constitutes an allowable unit of prosecution. Even if we were unable to reach this conclusion from the language of the statute, our consideration of the other factors previously mentioned to discern legislative intent would lead us to that ultimate result.
The court in Bautista, in determining that separate convictions for DUI manslaughter are appropriate for each victim killed in a single accident, noted that DUI manslaughter fell within the general category of homicide offenses and explained:
The first enactment of the DUI manslaughter statute in 1923 provided that violations of the statute were to "be punished as provided by existing law relating to manslaughter." Ch. 9269, § 1, Laws of Fla. (1923). Prior to the 1923 legislation, there was no specific Florida statute dealing with manslaughter arising from the operation of motor vehicles, and these cases were prosecuted under the general manslaughter statute, which has existed, essentially in its present form, since 1868. The first manslaughter statute was enacted in 1868. It defined the offense as the killing of "one human being." When the homicide statute was revised in 1892, manslaughter was defined as the killing of "a human being." This statutory language, which has remained unchanged since 1892, indicates a clear legislative intent that the offense of manslaughter should be punished based on the number of victims rather than by reference to the particular act leading to the deaths.
Homicide statutes traditionally and uniformly impose punishment for each death caused by a defendant's criminal conduct. Homicides are punished based on the number of victims because the legislative purpose behind homicide statutes is to safeguard the lives of individuals. The Florida Legislature was guided by this purpose in enacting the DUI manslaughter statute; the unambiguous aim of the statute is to ensure the safety of individual citizens. Therefore, the gravamen of the offense of DUI manslaughter is not a traffic violation, but the killing of a human being.
863 So.2d at 1186 (footnotes and citations omitted).
Because vehicular homicide falls within the category of homicide crimes, we find *373 this reasoning applicable to the instant case. Moreover, we note that section 782.071 states that "`[v]ehicular homicide' is the killing of a human being." The use of the article "a" clearly indicates the Legislature's intent that the death of each human being is the allowable unit of prosecution under the statute. Hence, separate convictions for vehicular homicide for each death resulting from one accident do not violate double jeopardy principles.
McKnight argues that the punishment for each count is enhanced to a first-degree felony pursuant to section 782.071(1)(b) because he left the scene of the accident and, because there was only one accident scene, he cannot twice be convicted for the same offense. In support of this argument, McKnight cites several cases that hold that it is a violation of double jeopardy to convict an individual of both vehicular homicide and leaving the scene of an accident with death or injuries. See, e.g., Hunt v. State, 769 So.2d 1109, 1111 (Fla. 2d DCA 2000) ("Both the First and Fourth Districts have held that double jeopardy bars prosecution under section 316.027(1), Florida Statutes (1991), because that section is subsumed by section 782.071(2), Florida Statutes (1991).") (citing Pierce v. State, 744 So.2d 1193, 1196 (Fla. 4th DCA 1999); Wright v. State, 573 So.2d 998, 1001 (Fla. 1st DCA 1991)).[5] McKnight also cites Franklin v. State, 719 So.2d 938, 940 (Fla. 1st DCA 1998), wherein the court stated that "[b]ecause section 316.027 did not intend multiple charges for leaving the scene of one accident, appellant's conviction for leaving the scene of an accident resulting in injury must be reversed on this ground as well."
The obvious distinction between the cases McKnight relies upon and the instant case is that McKnight is not faced with convictions for leaving the scene of an accident pursuant to section 316.027, Florida Statutes (2001), in addition to his convictions for vehicular homicide under section 782.071(1). Moreover, effective October 1, 1996, the Legislature amended section 782.071(1)(b) by deleting the language "willfully fails to stop or comply with the requirements of s. 316.027(1)" and substituting the provision that the defendant "failed to give information and render aid as required by s. 316.062." Ch. 96-330, § 14, at 1902, Laws of Fla.[6] We believe that this amendment indicates the Legislature intended to clarify that the aspect of criminal conduct to be punished under section 782.071(1)(b) is the defendant's failure to render aid to each victim of the accident as required by section 316.062 rather than the defendant's act of fleeing from a single accident scene in violation of section 316.027. See Franklin, 719 So.2d at 940 ("Moreover, the intended unit of prosecution under section 316.027 is each accident rather than each victim."); Hardy v. State, 705 So.2d 979, 980 (Fla. 4th DCA 1998) ("[O]ur reading of section 316.027 convinces us that the intended `unit of prosecution' for these offenses is not the number of victims, but the number of accidents."). This conclusion is buttressed by State v. Dumas, 700 So.2d 1223 (Fla.1997), wherein the court explained the *374 purpose of the requirement that a motorist stop and render aid:
Florida law imposes an affirmative duty on a driver to stop, render aid, and provide certain information necessary for an insurance claim and an accident report whenever there is an injury. § 316.062, Fla. Stat. (1995). Florida law further makes it a felony to fail to complete these duties. § 316.027(2), Fla. Stat. (1995). One of the main purposes of the statute is to ensure that accident victims receive medical assistance as soon as possible.
Id. at 1225 (citation omitted). Hence, the fact that the crime of vehicular homicide is elevated to a first-degree felony if the defendant failed to comply with section 316.062 is a result-driven sanction that implicitly recognizes the possibility that the victims may not have died had the defendant complied with his statutory duty.
Based on our examination of the statutory language of section 782.071(1)(b) and its interrelated statutory provisions, its pertinent legislative history, the purpose for its enactment, the relevant case law, and the uniform statutory treatment of manslaughter offenses, see Bautista, we believe that the legislative intent is clear and leads to only one conclusion. The aspect of criminal conduct to be punished in a prosecution for vehicular homicide under section 782.071(1)(b) is the failure to render aid to the victims and, therefore, the allowable unit of prosecution is each victim. Because the legislative intent is clear, the rule of lenity is inapplicable. Accordingly, multiple first-degree felony convictions under section 782.071(1)(b), based on the number of victims killed in a single accident who did not receive aid from the defendant, are appropriate without violating double jeopardy principles regardless of the fact that the defendant fled only one accident scene.
AFFIRMED.
PETERSON and MONACO, JJ., concur.
NOTES
[1] McKnight also argues that reversal is appropriate because the trial court erred in excluding evidence of a law enforcement policy change that prohibited the pursuit of individuals who had not committed a crime and evidence that one of the victims died after being taken off a ventilator. We affirm the trial court's exclusion of this evidence without further comment.
[2] McKnight was also charged with felony fleeing or attempting to elude a police officer, leaving the scene of an accident, and resisting a law enforcement officer. The jury returned a verdict finding McKnight guilty of each crime. The State dismissed the leaving the scene of an accident charge, and McKnight was sentenced on the remaining counts. The convictions and sentences for these offenses are not issues before us.
[3] The issue addressed by the Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), was whether the government could obtain two convictions for one sale of narcotics based on violations of two statutes. It was resolved by the test for which the case became eponymous: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Id. at 304, 52 S.Ct. 180 (citation omitted).
[4] See United States v. Ansaldi, 372 F.3d 118, 125 n. 3 (2d Cir.) ("Ordinarily, courts apply the so-called `Blockburger test' to determine whether or not two charged offenses constitute different crimes. That analysis is inappropriate in this case, because there is only one statute at issue, and so, nothing to compare. Rather than determining whether one act falls within two distinct statutes, as in Blockburger, we are asking whether two acts constitute one statutory offense.") (citation omitted), cert. denied, ___ U.S. ___, 125 S.Ct. 364, 160 L.Ed.2d 266, and cert. denied, ___ U.S. ___, 125 S.Ct. 430, 160 L.Ed.2d 324 (2004); United States v. Weathers, 186 F.3d 948, 952 (D.C.Cir.1999) ("Where two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the Blockburger test, but rather by asking what act the legislature intended as the `unit of prosecution' under the statute.") (citations omitted), cert. denied, 529 U.S. 1005, 120 S.Ct. 1272, 146 L.Ed.2d 221 (2000).
[5] But see Lawrence v. State, 801 So.2d 293 (Fla. 2d DCA 2001) (holding that the convictions for DUI manslaughter and leaving the scene of an accident arising out of one accident, although involving death as a common element, are not contrary to legislative intent and do not constitute double jeopardy; receding from Pelham v. State, 771 So.2d 1254 (Fla. 2d DCA 2000)), review denied, 821 So.2d 297 (Fla.2002).
[6] We note with interest that violation of section 316.027(1) is a felony, while violation of section 316.062 constitutes a noncriminal traffic infraction.