72 So.3d 145 (2011)
Calvin Earl SUGGS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 4D08-2913.
District Court of Appeal of Florida, Fourth District.
May 25, 2011.
Opinion Denying Rehearing En Banc October 12, 2011.
*146 Carey Haughwout, Public Defender, and John Pauly, Assistant Public Defender, West Palm Beach, for appellant.
Pamela Jo Bondi, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
GERBER, J.
A jury convicted the defendant of four counts of "written threat to kill or do bodily injury" for sending two letters, each of which threatened the same two persons. *147 The defendant argues that his convictions violate the double jeopardy clause.[1] More specifically, he argues that the "allowable unit of prosecution" for the charge should be the number of letters or communications sent, and not the number of people to whom each letter or communication is sent.[2] We disagree. We hold that the allowable unit of prosecution is the number of persons to whom each letter or communication is sent, and not the number of letters or communications sent. Therefore, we affirm.
The defendant sent the two letters to Karen Robertson and Hope Suggs. Karen has legal custody of all five of the defendant's sons. Hope is the defendant's ex-wife and the mother of four of the defendant's sons. Hope lives part-time with Karen. Both letters contained statements which could be interpreted as threats to kill or do bodily injury to Karen and Hope.
Based on the letters, the state charged the defendant with violating section 836.10, Florida Statutes (2004), entitled "Written threats to kill or do bodily injury; punishment." That statute provides, in pertinent part:
If any person writes or composes and also sends or procures the sending of any letter or inscribed communication, so written or composed, whether such letter or communication be signed or anonymous, to any person, containing a threat to kill or to do bodily injury to the person to whom such letter or communication is sent, or a threat to kill or do bodily injury to any member of the family of the person to whom such letter or communication is sent, the person so writing or composing and so sending or procuring the sending of such letter or communication, shall be guilty of a felony of the second degree....
§ 836.10, Fla. Stat. (2004).[3] As noted in State v. Wise, 664 So.2d 1028, 1030 (Fla. 2d DCA 1995), "[a] violation of this statute occurs when: (1) a person writes or composes a threat to kill or do bodily injury; (2) the person sends or procures the sending of that communication to another person; and (3) the threat is to the recipient of the communication or a member of his family." (citation omitted).
Although the defendant sent only two letters, the state charged the defendant's alleged violation of section 836.10 in four counts: sending the first letter to Karen; sending the first letter to Hope; sending the second letter to Karen; and sending the second letter to Hope.
The jury found the defendant guilty of all four counts. This appeal followed, raising the double jeopardy argument *148 for the first time. We have jurisdiction to consider the argument. See Latos v. State, 39 So.3d 511, 513 (Fla. 4th DCA 2010) ("A double jeopardy violation `is a fundamental error which can be raised for the first time on appeal.'") (citation omitted). Our review is de novo. See id. ("`Determining whether double jeopardy is violated based on undisputed facts is a purely legal determination, so the standard of review is de novo.'") (citation omitted).
The defendant argues that his convictions violate the double jeopardy clause because, in his view, the allowable unit of prosecution for a violation of section 836.10 should be the number of letters or communications sent, and not the number of people to whom each letter or communication is sent. To support this argument, the defendant relies on the "a/any" test which our supreme court approved in Grappin v. State, 450 So.2d 480 (Fla.1984). There, the court considered whether the unlawful taking of two or more firearms during the same criminal episode was subject to separate prosecution as to each firearm under section 812.014(2)(b)3., Florida Statutes (1981). Id. at 481. Under that statute, "[i]t is grand theft ... if the property stolen is ... [a] firearm."[4] The court found that the use of the article "a" in reference to "a firearm" in section 812.014(2)(b)3. "clearly shows that the legislature intended to make each firearm a separate unit of prosecution." Id. at 482. The court further found that its construction was consistent with federal court decisions holding that the term "any firearm" is "ambiguous with respect to the unit of prosecution and ... must be treated as a single offense." Id. (emphasis added).
The defendant, applying Grappin to this case, argues that the legislature's use of the terms "any letter" and "any person" in section 836.10 indicates the legislature's intent that the allowable unit of prosecution for a violation of section 836.10 should be the number of letters or communications sent, and not the number of people to whom each letter or communication is sent. The defendant further argues that the legislature's use of the word "any" creates at least an ambiguity which, based on the rule of lenity, must be resolved in his favor. See id. ("If the Congress does not fix the punishment for federal offenses clearly and without ambiguity ... then the rule of lenity applies and the ambiguity is to be resolved against turning a single transaction into multiple offenses.") (citing Bell v. United States, 349 U.S. 81, 82, 75 S.Ct. 620, 99 L.Ed. 905 (1955)).
In response, the state argues that the defendant's reliance on Grappin's "a/any" test is misplaced in light of the supreme court's more recent opinion in Bautista v. State, 863 So.2d 1180 (Fla.2003). In Bautista, the court considered whether the occurrence of multiple deaths in a single DUI-related crash allowed for multiple convictions for DUI manslaughter under section 316.193(3)(c)3., Florida Statutes (2002). Id. at 1181. Under that statute, a person commits DUI manslaughter if the person, by reason of driving under the influence, "causes or contributes to causing... the death of any human being." § 316.193(3)(c)3., Fla. Stat. (2002) (emphasis added). The court held that Grappin's "a/any" test did not preclude multiple convictions under section 316.193(3)(c)3. Bautista, 863 So.2d at 1188. The court reasoned:
[The defendant's] argument based on the a/any test succeeds only if we were *149 to apply the test as a simple syntactical rule in isolation from the context in which the test arose. However, it would be improper to so isolate this distinction.... [T]he a/any distinction was used in Grappin as one part of a common sense application of well-established rules of statutory interpretation, including reference to the overall statutory scheme and purpose as well as to related cases. Within this context, the a/any test is a valid linguistic tool that is helpful in establishing the Legislature's intended unit of prosecution. However, the a/any test is not an infallible or exclusive indicator of legislative intent. Rather, absent clear legislative intent to the contrary, the a/any test serves as a valuable but nonexclusive means to assist courts in determining the intended unit of prosecution.
... Grappin and its progeny should not be interpreted to suggest that the intended unit of prosecution is automatically rendered ambiguous whenever a statute uses the word "any." ... The a/any test should not be applied to create an ambiguity where none exists and then to reach a result contrary to clear legislative intent.
Id. at 1187-88 (footnotes omitted).
We find that the reasoning in Bautista applies to this case. "In attempting to discern legislative intent, we first look to the actual language used in the statute." Id. at 1185. Here, the actual language of the statute proscribes communications "containing a threat to kill or do bodily injury to the person to whom such letter or communication is sent, or a threat to kill or do bodily injury to any member of the family of the person to whom such letter or communication is sent." § 836.10, Fla. Stat. (2004) (emphasis added). In our view, the statute's plain focus is on "the person" to whom such letter or communication is sent. Accord Smith v. State, 532 So.2d 50, 52 (Fla. 2d DCA 1988) (the proscription which section 836.10 communicates is "not difficult to divine.... Section 836.10 is justified by the right of all persons to live free of unexpected and unwarranted fear of harm"). Thus, we hold that, under section 836.10, the unit of allowable prosecution is determined by the number of persons to whom a letter or communication is sent, and not the number of letters or communications sent. In short, the statute is not ambiguous and the rule of lenity does not apply in this situation.
Our decision is consistent with our recent holding in Mauldin. There, the defendant pointed a BB gun at two people and threatened to "cap them." 9 So.3d at 26. He was convicted of two counts of aggravated assault with a deadly weapon and ultimately was sentenced to consecutive sentences on those counts. Id. He later argued that the multiple convictions and consecutive sentences violated double jeopardy. Id. at 27. We held that the multiple convictions and consecutive sentences were permissible. Id. at 28. We reasoned:
It is clear from the assault statute that the legislature intended to punish the criminal defendant separately for each victim the defendant placed in fear by his or her threat. The assault statute define[s] the offense as: `[A]n intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a wellfounded fear in such person that such violence is imminent.' § 784.011(1), Fla. Stat. (2002). An element of assault is the placing in fear of a `person,' and the statute criminalizes unlawful threats to `the person of another.' Where multiple persons are placed in well-founded fear of imminent violence by a single threat, *150 and the elements of the offense are otherwise satisfied, multiple convictions are permissible.
Id. Although the statute at issue here does not include "a well-founded fear" as an element, our focus in Mauldin was not on that element. Rather, we focused on the number of persons to whom a threat was communicated. Our focus today remains the same.
To base the unit of allowable prosecution on the number of letters or communications sent would not only fail to comport with the actual language of the statute and our own precedent, but also would lead to nonsensical results. For example, if the defendant in this case communicated all of his threats to Karen in the first letter and all of his threats to Hope in the second letter, then such actions would constitute two counts according to the defendant's argument. But if the defendant merely decided to save the cost of a stamp and communicated all of his threats to Karen and Hope in one letter sent to their joint address, then such action would constitute only one count, even though the defendant's intentto place both Karen and Hope in fear of harmremained the same. Such a nonsensical result cannot exist as a matter of law.
The dissent nevertheless argues that the statute punishes based on the number of letters sent and not the number of persons threatened in the letter. In support of that argument, the dissent relies on 18 U.S.C. § 876(b) (2004), which is the federal statute on mailing threatening communications with the intent to extort money. The federal statute provides:
Whoever, with intent to extort from any person any money or other thing of value, so deposits, or causes to be delivered, as aforesaid, any communication containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than twenty years, or both.
The federal statute, however, contains only two elements: "(1) a threatening communication (2) sent through the mails." United States v. Geisler, 143 F.3d 1070, 1071-72 (7th Cir.1998). Neither of those elements refers to the person to whom such letter or communication is sent. Section 836.10, on the other hand, contains three elements, the second and third of which refer to the person to whom such letter or communication is sent. See Wise, 664 So.2d at 1030. Those references support our conclusion that section 836.10 punishes based on the number of persons to whom the letter or communication is sent and not the number of letters sent.
The dissent also focuses on the fact that, with regard to the two letters involved in this case, the defendant addressed one letter to Karen and the other letter to Hope. According to the dissent, that fact is significant because section 836.10 does not punish the defendant for sending a letter to Karen threatening Hope and vice versa. As the dissent notes, however, the defendant has not raised an insufficiency of the evidence argument in this appeal. Thus, for our purposes, it is insignificant that the defendant addressed one letter to Karen and the other letter to Hope. Instead, based on the jury's verdict, we are required to accept the state's charges that the defendant sent both letters to Karen and Hope. As a result, we are compelled to affirm.
Affirmed.[5]
*151 STEVENSON, J., concurs.
WARNER, J., dissents with an opinion.
WARNER, J., dissenting.
I dissent. The statute punishes the sending of the letter, not the number of persons threatened in the letter. Therefore, two of the four convictions violate double jeopardy.
For purposes of this dissent, I have edited the statute to include only the operative portions of section 836.10, Florida Statutes (2004), applicable to this case:
If a person writes ... and also sends... any letter ... to any person, containing a threat to kill or to do bodily injury to the person to whom such letter... is sent, or a threat to kill or do bodily injury to any member of the family of the person to whom such letter ... is sent, the person so writing ... and so sending ... of such letter, shall be guilty of a felony of the second degree....
As noted in State v. Wise, 664 So.2d 1028, 1030 (Fla. 2d DCA 1995), a violation of this statute occurs when: (1) a person writes or composes a threat to kill or do bodily injury; (2) the person sends or procures the sending of that communication to another person; and (3) the threat is to the recipient of the communication or a member of his family. The act of sending the letter is the prosecutable offense. Wise involved the issue of venue for the prosecution of the offense, and the court explained that the act of sending for venue purposes can include where the letter was received. In a footnote, however, the court noted: "This is not to say that prosecution would not be appropriate in a case in which a threatening letter was mailed but not received by the intended recipient." In other words, the court did not decide that receipt of the letter was an essential element of the offense.
Section 836.10, Florida Statutes is similar to 18 U.S.C. § 876(b) involving the mailing of threatening communications. The federal statute requires an intent not present in the Florida statute but also punishes the sending of a communication containing a threat to injure the addressee:

Whoever, with intent to extort from any person any money or other thing of value, so deposits, or causes to be delivered, as aforesaid, any communication containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than twenty years, or both.
(emphasis added). The crime contains only two elements: "(1) a threatening communication (2) sent through the mails." See United States v. Geisler, 143 F.3d 1070, 1071-72 (7th Cir.1998). Federal cases suggest that the unit of prosecution is the letter, not the number of people to whom it is addressed nor the number of people threatened in the letter. For instance, in United States v. Lincoln, 589 F.2d 379 (8th Cir.1979), the defendant sent two letters which were addressed to the Clerk of Court of the U.S. Court of Appeals for the Eighth Circuit, and each letter made threats against all of the judges of the Eighth Circuit. The defendant was charged and convicted for only two offenses, namely one for each letter sent. In United States v. Chapman, 440 F.Supp. 1269 (E.D.Wis.1977), a letter addressed to two individuals and threatening both of them was treated as one violation of the statute. Mailing the letter, not writing it or its contents, is the "gravamen of the offense." Bender v. United States, 387 F.2d 628, 630 (1st Cir.1967).
Grappin v. State, 450 So.2d 480 (Fla. 1984), is more on point to this case than Bautista v. State, 863 So.2d 1180 (Fla. *152 2003), relied on by the majority. In Grappin, the defendant stole five firearms during a single burglary and was charged with five separate offenses of grand theft. The statute imposed punishment for the theft of "a firearm." The court determined that by use of "a," the legislature determined that the theft of each firearm was a separate unit of prosecution. However, it noted that federal courts had construed the prohibition of the theft of "any firearm" as being ambiguous to the unit of prosecution, thus requiring the application of the rule of lenity, precluding multiple charges for the theft of multiple firearms in a single theft.
In the same way, section 836.10 prohibits the sending of any letter. Just like the theft of any firearm, the unit of prosecution is ambiguous. Therefore, based upon the principle of lenity, the unit of prosecution must be the letter sent, not the number of persons to whom that one letter is sent.
The majority cites Bautista v. State, 863 So.2d 1180 (Fla.2003), as authority for its position. However, Bautista notes that "absent clear legislative intent to the contrary, the a/any test serves as a valuable but nonexclusive means to assist in determining the intended unit of prosecution." Id. at 1188 (emphasis added). In Bautista, the court found clear legislative intent to permit DUI manslaughter prosecutions based upon the number of deaths arising from a single incident. Bautista concluded that the Legislature intended to punish each death occurring in a DUI manslaughter, relying on the fact that homicide statutes punish each death, and that the original manslaughter statutes punished the killing of "a" human being. Thus, Bautista was based on an account of legislative history of manslaughter.
On the other hand, the Bautista court also noted its prior decision in Wallace v. State, 724 So.2d 1176 (Fla.1998), where the court held that a defendant who resisted two officers during a single incident could be charged with only one crime because the statute prohibited resisting "any" officer. Relying on the principle of lenity, Wallace concluded that the Grappin analysis should apply.
In this case, the majority cannot cite any legislative history or clear intent to justify its result. There is none. The majority concludes that the focus of section 836.10 is the threat to the person to whom a communication is sent. But Wise, as well as a comparison of the similar federal statute, show that the focus is the sending of a letter, not its receipt and the striking of fear in the mind of the recipient.
Mauldin v. State, 9 So.3d 25 (Fla. 4th DCA 2009), cited by the majority, is also inapplicable, because the unit of prosecution under the assault statute is a single person. See § 784.011(1), Fla. Stat. ("[A]n intentional, unlawful threat ... to do violence to the person ... which creates a well-founded fear in such ... person that violence is imminent.") (emphasis added). An essential element of the offense is the victim's well-founded fear of violence. See Johnson v. State, 888 So.2d 691 (Fla. 4th DCA 2004). Therefore, the statute focuses on the effect of the perpetrator's acts on the victim. In contrast, section 836.10 does not require any effect on the victim as an essential element of the crime. Neither the actual intent to do harm, nor the ability to carry out the harm threatened, is an essential element of the crime. See Smith v. State, 532 So.2d 50, 52 (Fla. 2d DCA 1988). The focus of the statute is on the sending of the communication.
The issue of the unit of prosecution renders the statute ambiguous. Where a criminal statute is ambiguous, the rule of lenity applies, and the statute must be construed most favorably to the accused. *153 See Kasischke v. State, 991 So.2d 803, 814 (Fla.2008). This rule has been applied to ambiguity involving statutes where the court must use the a/any test to determine the unit of prosecution. See Francis v. State, 41 So.3d 975 (Fla. 5th DCA 2010) (involving convictions for possession of firearms by a convicted felon). The majority has not pointed to clear legislative intent, other than the ambiguous language of the statute itself, to support its position.
Moreover, even under the majority's opinion, the four convictions violate double jeopardy. The majority holds that the allowable unit of prosecution is the number of persons to whom the letter is sent. The defendant sent two letters in this case, but each was addressed to only one person. One was addressed to Karen Robertson. The other was addressed to Hope Suggs. In each, the defendant rambled about his difficulties with each woman and his children. He made threats against both Hope and Karen in each letter, but again each letter was sent to only one person. Therefore, even under the majority's analysis, only two convictions should result from the sending of these letters.
Furthermore, although not raised by appellant in his brief (even though the issue was raised at trial), the statute does not punish appellant for sending a letter to Hope threatening Karen and vice versa. Karen and Hope are not related, so they are not a "member of the family" of the other. Therefore, even if the letter to Hope did threaten Karen, it is not a violation of the statute.
For all of these reasons, I would reverse, remand, and instruct the trial court to vacate two of the four convictions for violating section 836.10.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
The motion for rehearing en banc is hereby denied.
STEVENSON and GERBER, JJ., concur.
WARNER, J., concurs specially.
WARNER, J., concurring specially.
I concur in the denial of the request for rehearing en banc by the appellant. He suggests that the majority decision in this case conflicts with Cruz v. State, 956 So.2d 1279, 1282 n. 4 (Fla. 4th DCA 2007), where in a footnote we said, quoting State v. Mitchell, 719 So.2d 1245, 1248 (Fla. 1st DCA 1998):
The Grappin/Watts test is drawn from two decisions, Grappin v. State, 450 So.2d 480 (Fla.1984), and State v. Watts, 462 So.2d 813 (Fla.1985), and stands
for the proposition that when a question arises regarding the unit of prosecution intended by the legislature in a particular criminal statute, use of the article `a' will result in the conclusion that the legislature clearly intended that the commission of multiple proscribed acts in the course of a single episode be prosecuted as discrete offenses; whereas use of the article `any' will result in the conclusion that the statute is ambiguous as to legislative intent and, as a result, in application of the rule of lenity to prohibit more than one application.
Cruz, however, is factually distinguishable and did not consider Bautista v. State, 863 So.2d 1180 (Fla.2003), upon which the majority relies.
I think the majority opinion conflicts with Grappin and Bautista. But it is not the purpose of en banc proceedings to resolve conflicts between our cases and cases from the supreme court. That is for the supreme court under its discretionary jurisdiction, should it determine that a *154 true conflict exists. See Fla. R.App. P. 9.030(a)(2)(A)(iv). This case, however, reveals how Bautista has muddied the waters of statutory interpretation on the unit of prosecution, after Grappin had developed a clear and understandable rule which both the courts and the legislature could follow.
NOTES
[1] See U.S. Const., Amend. V ("No person shall be ... subject for the same offence to be twice put in jeopardy of life or limb.").
[2] The "allowable unit of prosecution" is "the aspect of criminal activity that the Legislature intended to punish." Mauldin v. State, 9 So.3d 25, 28 (Fla. 4th DCA 2009) (citation omitted). "Double jeopardy is not violated if the legislature intended separate punishments." Id.
[3] In 2010, the legislature amended section 836.10 as follows:

If a Any person who writes or composes and also sends or procures the sending of any letter, or inscribed communication, so written or composed or electronic communication, whether such letter or communication be signed or anonymous, to any person, containing a threat to kill or to do bodily injury to the person to whom such letter or communication is sent, or a threat to kill or do bodily injury to any member of the family of the person to whom such letter or communication is sent, the person so writing or composing and so sending or procuring the sending of such letter or communication, shall be guilty of commits a felony of the second degree....
Ch. 2010-51, § 1, Laws of Fla.
[4] That portion of the statute now is found at section 812.014(2)(c)5., Florida Statutes (2010).
[5] The jury also convicted the defendant of two counts of aggravated stalking based on the letters. The defendant has not challenged those convictions in this appeal either.