983 So.2d 37 (2008)
CITY OF FORT LAUDERDALE, Appellant,
v.
Jeffrey CROWDER, Anthony James, Terrance Neely, and State of Florida, Judicial Administrative Commission, Appellees.
Nos. 4D07-2264, 4D07-2265, 4D07-2454.
District Court of Appeal of Florida, Fourth District.
April 30, 2008.
Rehearing Denied June 27, 2008.
*38 Robert H. Schwartz and Alain E. Boileau of Adorno & Yoss, LLP., Fort Lauderdale, for appellant.
Christian D. Lake of The Justice Administrative Commission, Tallahassee, for appellees.
FARMER, J.
We have thrown together these otherwise unconnected cases to decide their single, common issue. In all they pose a question certified by the County Court (which we have recast):
Is the City of Fort Lauderdale responsible for the cost of representation of indigent defendants charged solely with a misdemeanor violation of a city ordinance?
We answer yes and return the cases for disposition.
All defendants are charged with violating Municipal Ordinance 16-1 of the City of Fort Lauderdale. The actual text of M.O. 16-1 is not especially significant. It is sufficient to accept that it makes unlawful under city ordinance the commission of any act within the city limits that would constitute a felony or misdemeanor under state law or county ordinance. The stated penalty for this violation of M.O. 16-1 is the penalty provided by state statute for the same conduct.
Crowder and Neely were charged with possession of paraphernalia. James was charged with possession of a controlled substance. In each case, the City charged the violation solely under the city ordinance. In none of these cases has the State of Florida charged the accused with a violation of state criminal statutes for the same conduct. The cases are being prosecuted by an attorney provided by the City, not by the State Attorney for the Seventeenth Circuit.
Each accused is indigent and unable to pay for legal representation and has demanded counsel. The Public Defender for the Seventeenth Circuit (Defender) has given notice that he will not provide indigent representation where an accused is charged with violations of only city ordinances. In Crowder the trial court held that the City must fund the representation. In the other two cases, the holding was that the State must pay. So the question is who pays?
The City argues that under article V, section 14, Florida Constitution, funding of public defenders is exclusively the responsibility of State government because it is a *39 "court-related function."[1] The State of Florida, through its Justice Administrative Commission, in turn argues that because the charges against these defendants were brought by the City to enforce a municipal ordinance, not state criminal law, the City must bear the cost of indigent representation. To understand why we agree with the Justice Administrative Commission, some history behind the constitutional provision in question is helpful.
After the adoption of the Constitution's article V in 1972, funding of the third branch of state government  the judicial branch  was largely borne by local government. The State had only a small share, section 14 of article V then providing only that compensation for judges would be the responsibility of the state by general law. In 1998, however, a new provision (known as Revision 7) was submitted to the electorate by the Constitution Revision Commission substantially and significantly revising judicial branch funding. The new plan for funding the judicial system primarily placed the burden on the state, with the share of the counties greatly reduced. The principal source of funding was to be general revenues and user fees and costs. It was adopted by the electorate in 1998 and became fully effectuated by 2004.
The new subdivision (a) of section 14, article V, provides for judicial branch funding as follows:
"Funding for the state courts system, state attorneys' offices, public defenders' offices, and court-appointed counsel, except as otherwise provided in subsection (c), shall be provided from state revenues appropriated by general law." [e.s.]
Art. V, § 14(a), Fla. Const. (1998). The newly added subsection (c), in turn, says:
"No county or municipality, except as provided in this subsection, shall be required to provide any funding for the state courts system, state attorneys' offices, public defenders' offices, court-appointed counsel or the offices of the clerks of the circuit and county courts for performing court-related functions." [e.s.]
Art. V, § 14(c), Fla. Const. (1998). In its Statement of Intent, the Constitution Revision Commission explained: "The state's obligation includes, but is not limited to, funding for all core functions and requirements of the state courts system and all other court-related functions and requirements which are statewide in nature." [e.s.] 26 FLA. STAT. ANN. (Supp.) 67. Thus in spite of the seeming universality of the above quoted provision in subsection (c), the term court-related functions was meant by its drafters to encompass only those court related functions "which are statewide in nature."[2]
In 2003 the Legislature enacted omnibus legislation implementing the new requirements of Revision 7. See Ch.2003-402, Laws of Fla. The City argues these statutes are invalid to the extent they would make the City liable for the cost of indigent defense in this case. We think the *40 statutes are consistent with section 14, article V.
In section 27.51, the duties of a Public Defender were laid out thus:
"The public defender shall represent, without additional compensation, any person determined to be indigent under s. 27.52 and . . . charged with a misdemeanor authorized for prosecution by the state attorney . . . or a violation of a special law or county or municipal ordinance ancillary to a state charge, or if not ancillary to a state charge, only if the public defender contracts with the county or municipality to provide representation pursuant to ss. 27.54 and 125.69." [e.s.]
§ 27.51(1), Fla. Stat. (2007). Section 27.54 further provides:
"A public defender or regional counsel defending violations of . . . municipal ordinances punishable by incarceration and not ancillary to a state charge shall contract with . . . municipalities to recover the full cost of services rendered on an hourly basis or reimburse the state for the full cost of assigning one or more full-time equivalent attorney positions to work on behalf of the . . . municipality." [e.s.]
§ 27.54(2), Fla. Stat. (2007).
These statutes prescribing the duties of the Defender do not authorize an indigent defense for a penal charge exclusively involving a municipal ordinance violation unless it is a companion to a charge the Defender is authorized to handle. Essentially the Defender is authorized to represent only those indigent defendants charged with at least one state law violation. In the cases we confront today, there is no such charge. All are stand-alone municipal violations. The Public Defender for the Seventeenth Circuit has not contracted with the City of Fort Lauderdale to provide indigent representation in cases charging violations of its municipal ordinances. The State Attorney has not authorized these charges for prosecution.
In spite of what may seem to the City of Fort Lauderdale as an unconditional constitutional exemption from paying the cost of indigent representation in cases involving solely enforcement of municipal ordinances, we conclude that the term "court-related functions" as explained by the Constitution Revision Commission means only those judicially connected functions of the Public Defenders required by general law of a statewide nature. The enforcement of municipal ordinances is not a Public Defender function required by general law of a statewide nature. We agree with the Justice Administrative Commission that under general law the Public Defender is not authorized to provide legal representation in these cases at state expense.
Although the cities have been given authority to seek enforcement of their municipal ordinances, issues raised by a municipal decision to pursue that enforcement implicate solely matters of local concern. Under Florida general law, the statutes do not appear to explicitly authorize a municipal power of criminal prosecution. An express statutory provision for municipal ordinance enforcement stipulates civil actions, not criminal prosecutions. See § 162.30, Fla. Stat. (2007). Even then, section 162.30 pointedly specifies:
"municipalities are authorized and required to pay any counsel appointed by the court to represent a private party in such action if the provision of counsel at public expense is required by the Constitution of the United States or the Constitution of the State of Florida and if the party is indigent as established pursuant to s. 27.52. The . . . municipality shall bear all court fees and costs of any such action, and may, if it prevails, recover the court fees and costs *41 and expense of the court-appointed counsel as part of its judgment. The state shall bear no expense of actions brought under this section except those that it would bear in an ordinary civil action between private parties in county court." [e.s.]
§ 162.30, Fla. Stat. (2007). Section 162.30 makes clear that where incarceration is authorized  as in these cases  the City is required to pay for counsel made necessary for indigent defendants accused of violating such ordinances.
The City's liability for Public Defender costs results directly from its own voluntary decision to make these offenses a violation of city ordinance. Essentially, the City of Fort Lauderdale has used its ordinance-making power to turn every violation of state criminal laws committed within its borders ipso facto into a violation of city ordinance. Funding is made necessary only because the City has chosen to enforce its ordinance. As the Justice Administrative Commission points out, all city ordinances "must serve a valid municipal purpose."[3] Although we might find it difficult to comprehend any distinctively municipal purpose behind the City's M.O. 16-1, the City of Fort Lauderdale apparently believes some city purpose is served by localizing all state crimes occurring within. But the fact that an ordinance serves some municipal purpose does not make enforcement of the ordinance into a court-related function of article V authorized by general law.
One effect of this ordinance is that the City has effectually assumed that which is essentially a general, statewide function of criminal prosecution for such crimes. State statutes give the State Attorney the sole power to decide which misdemeanors to prosecute under state law. And the State Attorney's decision to prosecute thus requires the provision of state-funded counsel to indigent persons when incarceration is sought. Again, even if there is some uniquely municipal purpose that underlies turning every crime within its boundaries into a municipal ordinance violation, there is no logical reason to make all citizens throughout the State of Florida pay to enforce that purpose. As we read section 14, article V, the constitution does not require that result either.
We therefore hold that under section 14, article V, and the statutes enacted to carry out the constitutional provision, the City of Fort Lauderdale is required to fund counsel appointed to represent the indigent defendants in the kind of prosecutions involved in these cases.[4] Funding for such representation is not the responsibility of the State of Florida through the Public Defender in the circuit where the municipality is located. If the City wants the Public Defender to provide representation in such cases, it will have to come to an agreement with him and pay him accordingly.
The cases are returned to the trial court for consistent proceedings.
STEVENSON and TAYLOR, JJ., concur.
NOTES
[1] See Art. V, § 14(c), Fla.Const. (1998) ("No . . . municipality, except as provided in this subsection, shall be required to provide any funding for the . . . public defenders' offices, court-appointed counsel . . . for performing court-related functions.").
[2] In interpreting constitutional provisions, as distinguished from statutes, we consider the object or purpose to be accomplished by the provision, the prior state of the law, including the origin of the provision, as well as contemporaneous and practical considerations. Comments by the Constitution Revision Commission, as the author of the provision, as to the meaning of text are especially important.
[3] See State v. City of Sunrise, 354 So.2d 1206, 1209 (Fla.1978) ("Article VIII, Section 2, Florida Constitution, expressly grants to every municipality in this state authority to conduct municipal government, perform municipal functions, and render municipal services. The only limitation on that power is that it must be exercised for a valid `municipal purpose.'").
[4] In reaching our holding, we have expressly construed a provision of the state constitution and, in the event, have necessarily found valid the statutes discussed.