DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

NIKKI ALVAREZ-SOWLES, as Clerk and Comptroller of Pasco County,

Appellant,

v.

PASCO COUNTY, FLORIDA, a political subdivision,

Appellee.

No. 2D2023-0305

_____

June 7, 2024

BY ORDER OF THE COURT:

The motion for correction, clarification, and/or certification is granted to the extent it seeks correction of a scrivener's err. The prior opinion dated January 17, 2024, is withdrawn, and the attached opinion is issued in its place. In all other respects the motion is denied. No further motions for rehearing, clarification, or certification will be entertained.

I HEREBY CERTIFY THE FOREGOING IS A TRUE COPY OF THE ORIGINAL COURT ORDER.


MARY ELIZABETH KUENZEL
CLERK

DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

NIKKI ALVAREZ-SOWLES, as Clerk and Comptroller of Pasco County,

Appellant,

v.

PASCO COUNTY, FLORIDA, a political subdivision,

Appellee.

No. 2D2023-0305

_____

June 7, 2024

Appeal from the Circuit Court for Pasco County; Emily A. Peacock, Associate Judge.

David M. Caldevilla of de la Parte, Gilbert, McNamara & Caldevilla, P.A., Tampa; and Dennis J. Alfonso of McClain & Alfonso, P.A., Dade City (withdrew after briefing); Nancy McClain Alfonso of Alfonso Hersch, P.A., Dade City (substituted as counsel of record), for Appellant.

Nichole "Nikki" Alvarez-Sowles, pro se.

Gregory T. Stewart, Kirsten H. Mood, and Matthew R. Shaud of Nabors, Giblin & Nickerson, P.A., Tallahassee, for Appellee.

BLACK, Judge.

    This appeal concerns the obligations of Pasco County under article V, section 14, of the Florida Constitution and section 29.008, Florida

Statutes, to "fund the cost of . . . existing multiagency criminal justice information systems"[1] and to "pay reasonable and necessary salaries, costs, and expenses of the state courts system to meet local requirements as determined by general law."  For the reasons stated below, we reverse in part and affirm in part the final summary judgment entered in favor of Pasco County.

In 2020, after the office of the Pasco County clerk and comptroller experienced a significant reduction in revenues, Nichole "Nikki" Alvarez-Sowles, in her capacity as the clerk and comptroller of Pasco County (the Clerk), initiated an investigation to determine if additional financial resources were available to her office.  At the conclusion of the investigation, the Clerk determined that Pasco County is obligated to provide funding for the multiagency criminal justice information system and for the courthouse annex located in New Port Richey because it constitutes a local requirement.[2]  Thereafter, in April 2021, the Clerk submitted her budget request to Pasco County's Board of County Commissioners (the BOCC) for the 2021-2022 fiscal year.  *See* § 218.35(2), Fla. Stat. (2020).  The budget request was significantly greater than the requests made by the Clerk's predecessor and included a request for funds to pay for the expenses incurred by the Clerk to operate and maintain the multiagency criminal justice information system and the expenses incurred by the Clerk related to the courthouse annex.  The BOCC agreed to provide funds for the multiagency criminal justice

---

[1] We note that while "multiagency" is hyphenated in the Florida Constitution, it is not hyphenated in section 29.008.

[2] There is a courthouse located in Dade City, Pasco County's county seat, as required by statute.  *See* § 138.09, Fla. Stat.  There is also a second courthouse, referred to as the courthouse annex, in New Port Richey.

information system but declared that it would phase in the funding request over a period of three years; the BOCC denied the request for funding related to the courthouse annex.

On November 12, 2021, the Clerk filed a three-count declaratory relief action against Pasco County. Count I of the petition sought a declaration of the parties' obligations with regard to the funding for the multiagency criminal justice information system, count II sought a declaration of the parties' obligations with regard to the funding for the courthouse annex, and count III sought supplemental relief with respect to counts I and II. The Clerk moved for summary judgment on count I, and Pasco County moved for summary judgment on all counts. Despite the fact that the BOCC had agreed to provide funding for the multiagency criminal justice information system, Pasco County contended that it was not legally obligated to do so. Following a hearing, the trial court entered final summary judgment in favor of Pasco County. The trial court determined that since the

> Multiagency [criminal justice information system] in existence today is not the same Multiagency [criminal justice information system] as was in existence when [the pertinent constitutional provision] or section 29.008, were adopted[,] . . . under the express language of the constitutional provision and section 29.008, Florida Statutes, [Pasco] County may provide funding for the subsequently acquired Multiagency [criminal justice information system], but its mandatory obligation extends only to the existing system that was operating at the time of the adoption of the various provisions.

The trial court further found that since the BOCC has the authority to review and make modifications to budget requests of the various constitutional officers, including the Clerk, it necessarily has the authority to provide funding in phases. With respect to count II, the trial court determined as a matter of law that the courthouse annex was not

3

established pursuant to either subsection 29.008(2)(a)1 or subsection 29.008(2)(a)2 and therefore that it did not constitute a local requirement. Based on these findings, the trial court concluded that it was appropriate to find in favor of Pasco County on the Clerk's claim for supplemental relief. This appeal followed.[3]

We review the trial court's final summary judgment de novo. *Cole v. Plantation Palms Homeowners Ass'n*, 371 So. 3d 413, 416 (Fla. 2d DCA 2023) (citing *Pio v. Simon Cap. GP*, 366 So. 3d 1200, 1203 (Fla. 2d DCA 2023)). "Under the new [2021 amendment] summary judgment standard, summary judgment is warranted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Id.* (alteration in original) (quoting *Pio*, 366 So. 3d at 1203). Issues involving constitutional and statutory interpretation are likewise reviewed de novo. *Fla. Hosp. Waterman, Inc. v. Buster*, 984 So. 2d 478, 485 (Fla. 2008).

I.  Multiagency criminal justice information system

The Clerk argues that the trial court erred in denying her motion for summary judgment and in granting Pasco County's competing motion for summary judgment with respect to count I. The Clerk contends that a reading of the plain language of article V, section 14(c), of the Florida Constitution and subsection 29.008(1)(h), Florida Statutes, dictates that Pasco County's obligation to fund the multiagency criminal justice information system did not cease when hardware and software that had comprised the system at the time of the amendment and enactment of the constitutional provision and statute, respectively, were replaced and

---

[3] Though the Clerk sought a declaration of the parties' obligations with respect to the funding at issue, the trial court only expressly addressed Pasco County's obligations or lack thereof.

4

that Pasco County is prohibited by article XII, section 25, of the Florida Constitution from providing the funding in phases over a period of years. We agree.[4]

a. Obligation to fund

Pasco County's obligation to fund the multiagency criminal justice information system turns on the interpretation of article V, section 14(c), and subsection 29.008(1)(h).

> After the adoption of the Constitution's article V in 1972, funding of the third branch of state government—the judicial branch—was largely borne by local government. The State had only a small share, section 14 of article V then providing only that compensation for judges would be the responsibility of the state by general law. In 1998, however, a new provision (known as Revision 7) was submitted to the electorate by the Constitution Revision Commission substantially and significantly revising judicial branch funding. The new plan for funding the judicial system primarily placed the burden on the state, with the share of the counties greatly reduced. The principal source of funding was to be general revenues and user fees and costs. It was adopted by the electorate in 1998 and became fully effectuated by 2004.

*City of Fort Lauderdale v. Crowder*, 983 So. 2d 37, 39 (Fla. 4th DCA 2008). There are exceptions to the state's funding obligations, including

---

[4] Pasco County argues on appeal, just as it did below, that while it may provide funding for the multiagency criminal justice information system it is not obligated to do so. Because the determination as to whether Pasco County can provide that funding in phases depends on whether a legal obligation to provide funding exists in the first instance, the Clerk properly invoked the jurisdiction of the trial court to declare whether Pasco County has a legal obligation to fund the multiagency criminal justice information system. *See Ranucci v. City of Palmetto*, 317 So. 3d 270, 274 (Fla. 2d DCA 2021) (quoting *Harris v. Aberdeen Prop. Owners Ass'n*, 135 So. 3d 365, 368 (Fla. 4th DCA 2014)).

5

those found in subdivision (c), which provides in pertinent part as follows:

> *Counties shall be required to fund* the cost of communications services, existing radio systems, *existing multi-agency criminal justice information systems*, and the cost of construction or lease, maintenance, utilities, and security of facilities for the trial courts, public defenders' offices, state attorneys' offices, and the offices of the clerks of the circuit and county courts performing court-related functions.

Art. V, § 14(c), Fla. Const. (emphasis added). Statutes were enacted to implement the new requirements of Revision 7, including section 29.008, which was enacted in 2000. *See* ch. 2000-237, § 8, Laws of Fla. Section 29.008 provides in pertinent part as follows:

> (1) Counties are required by s. 14, Art. V of the State Constitution to fund the cost of communications services, existing radio systems, *existing multiagency criminal justice information systems*, and the cost of construction or lease, maintenance, utilities, and security of facilities for the circuit and county courts, public defenders' offices, state attorneys' offices, guardian ad litem offices, and the offices of the clerks of the circuit and county courts performing court-related functions. . . . For purposes of implementing these requirements, the term:
>
> > . . . .
>
> (h) "Existing multiagency criminal justice information systems" includes, but is not limited to, those components of the multiagency criminal justice information system as defined in s. 943.045, supporting the offices of the circuit or county courts, the public defenders' offices, the state attorneys' offices, or those portions of the offices of the clerks of the circuit and county courts performing court-related functions that are used to carry out the court-related activities of those entities. This includes upgrades and maintenance of the current equipment, maintenance and upgrades of supporting technology infrastructure and associated staff, and services and expenses to assure continued information sharing and reporting of information to the state. The counties shall also provide additional information technology services, hardware,

6

and software as needed for new judges and staff of the state courts system, state attorneys' offices, public defenders' offices, guardian ad litem offices, and the offices of the clerks of the circuit and county courts performing court-related functions.

§ 29.008(1)(h) (emphasis added). A "[c]riminal justice information system" is "a system, including the equipment, facilities, procedures, agreements, and organizations thereof, for the collection, processing, preservation, or dissemination of criminal justice information." § 943.045(13), Fla. Stat. Article XII, section 25(b), provides that "the amendment to Section 14 shall be fully effectuated by July 1, 2004."

In the late 1970s software was acquired for the purpose of implementing and developing a multiagency criminal justice information system in Pasco County. At that time and for several decades thereafter, the system's software applications and data were stored on Pasco County's IBM mainframe. The IBM mainframe not only hosted the software applications that permitted various agencies to access the criminal justice information but was also used by several other entities for the purpose of data storage and retrieval. The IBM mainframe eventually became so antiquated that it was difficult to operate, maintain, and repair. So Pasco County decided to replace the IBM mainframe with Microsoft Windows servers; the IBM mainframe was officially retired in 2019.

Meanwhile, the Clerk's predecessor decided to replace the software that had been used by her office to interface with the multiagency criminal justice information system, which had also become antiquated. The Clerk's predecessor chose a Microsoft Windows based platform called CLERICUS, which became operational in 2016. CLERICUS is hosted on the Clerk's servers. It is undisputed that CLERICUS is used for the

7

collection, processing, preservation, and dissemination of criminal justice information and that various criminal justice agencies interface with it.

In finding in favor of Pasco County on the parties' competing motions for summary judgment with respect to count I, the trial court determined that because both the constitutional and statutory provisions expressly refer to "existing" multiagency criminal justice information systems and because the hardware and software components of the current Pasco County multiagency criminal justice information system did not exist at the time the funding obligation was initially imposed, Pasco County is no longer obligated to fund the system. In other words, the trial court determined that Pasco County's funding obligation extended only to the multiagency criminal justice information system as it existed at the time of the constitutional amendment and enactment of the statute. But this narrow reading fails to give effect to subsection 29.008(1)(h) as a whole.

When construing a statute, we must give effect to the legislative intent. *Larimore v. State*, 2 So. 3d 101, 106 (Fla. 2008) (citing *Bautista v. State*, 863 So. 2d 1180, 1185 (Fla. 2003)). "To discern legislative intent, a court must look first and foremost at the actual language used in the statute." *Id.* (citing *Bautista*, 863 So. 2d at 1185); *accord Leftwich v. Fla. Dep't of Corr.*, 148 So. 3d 79, 87 (Fla. 2014) ("The plain language of a statute is the primary method through which legislative intent may be discovered."); *see also Fla. Hosp. Waterman, Inc.*, 984 So. 2d at 485 ("[T]he principles governing constitutional interpretation largely parallel those of statutory interpretation." (citing *Zingdale v. Powell*, 885 So. 2d 277, 280 (Fla. 2004))). While the trial court considered the use of the word "existing" in both the constitution and statute, it failed to recognize that section 29.008 must "be interpretated to give effect to every clause

8

in it, and to accord meaning and harmony to all of its parts." *See Larimore*, 2 So. 3d at 106 (quoting *Jones v. ETS of New Orleans, Inc.*, 793 So. 2d 912, 914-15 (Fla. 2001)). After all, "significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage." *Id.* (quoting *Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc.*, 948 So. 2d 599, 606 (Fla. 2006)).

As set forth above, "[e]xisting multiagency criminal justice information systems" is defined in subsection 29.008(1)(h) to include "upgrades and maintenance of the current equipment, maintenance and upgrades of supporting technology infrastructure and associated staff, and services and expenses to assure continued information sharing and reporting of information to the state." Turning to the first two clauses, we note that the term upgrades is not defined in the statute. However, when the legislature does not define a term, we may derive its meaning from dictionaries. *Somers v. United States*, 355 So. 3d 887, 891-92 (Fla. 2022) (quoting *Debaun v. State*, 213 So. 3d 747, 751 (Fla. 2017)). Neither upgrades nor upgrade is defined in Black's Law Dictionary, but elsewhere upgrade is defined as follows: "to replace something (such as software or an electronic device) with a more useful version or alternative." *See Upgrade*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/upgrade (last visited Nov. 16, 2023); *see also Upgrade*, Dictionary.com, https://www.dictionary.com/browse/upgrade (last visited Nov. 16, 2023) (defining upgrade in part as "a new version, improved model, etc."); *Upgrade*, Britannica.com, https://www.britannica.com/dictionary/upgrade (last visited Nov. 16, 2023) (defining upgrade—and its plural form upgrades—in part as "an

9

occurrence in which one thing is replaced by something better, newer, more valuable, etc.").  From these dictionary definitions we derive the meaning of upgrades to include replacements such that subsection 29.008(1)(h) contemplates the replacement of equipment and supporting technology infrastructure.

Moreover, as to the third clause, the services and expenses pertaining to CLERICUS are clearly necessary to "assure continued information sharing and reporting of information to the state."  *See* § 29.008(1)(h).  Reading all these clauses together, as we must, leads to the inescapable conclusion that the legislature intended the counties' funding obligations pertaining to multiagency criminal justice information systems to continue even after replacement of the equipment and supporting technology comprising the system, including hardware and software.  Therefore, the trial court erred in determining that Pasco County is no longer obligated to fund the multiagency criminal justice information system and in granting summary judgment as a matter of law on that basis.

b.   Phased funding

Having determined that Pasco County's obligation to fund the multiagency criminal justice information system has not ceased, we next consider whether Pasco County can phase in that funding over time.  The answer lies in the Florida Constitution.

Article XII, section 25, provides as follows:

(a) Commencing with fiscal year 2000-2001, the legislature shall appropriate funds to pay for the salaries, costs, and expenses set forth in the amendment to Section 14 of Article V pursuant to a phase-in schedule established by general law.

(b) Unless otherwise provided herein, the amendment to Section 14 shall be fully effectuated by July 1, 2004.

10

No exception to the funding deadline for multiagency criminal justice information systems has been provided, and as such a plain reading of this constitutional provision dictates that the funding obligation for those systems imposed by the amendment to article V, section 14(c), must be fully effectuated by July 1, 2004.  Since that deadline has long passed, Pasco County is foreclosed from complying with its mandatory obligation to fund the multiagency criminal justice information system by providing that funding in phases over a period of years.

*Sheppard & White, P.A. v. City of Jacksonville*, 827 So. 2d 925 (Fla. 2002), further supports our reading of the constitutional provision.  In that case, the supreme court considered the appropriate hourly rate for the services of appointed counsel, the funding obligation for which was to be borne by the state.  As part of the supreme court's analysis, it stated the following:

> We must express our serious concerns as to how the system for compensating conflict counsel may develop in the very near future.  Florida is coming to a crossroad regarding its system for the representation of indigents in capital cases.  By constitutional amendment, the State will probably soon *assume the full responsibility of funding* for conflict counsel *no later than 2004.*

*Id.* at 932 (emphasis added) (citing art. V, § 14; art. XII, § 25, Fla. Const.).  Relying on the same two articles of the constitution that are at issue in our case, the supreme court surmised that the funding obligation imposed by constitutional amendment (referred to as Revision 7) would become the *full* responsibility of the state *no later than 2004.*  We in turn believe that it is appropriate to interpret those constitutional provisions, for purposes of this case, to require Pasco County to have assumed full responsibility for funding of the multiagency criminal

11

justice information system no later than July 1, 2004, such that phased-in funding is not permitted.

The trial court therefore erred in failing to enter summary judgment in favor of the Clerk on count I and in granting summary judgment in favor of Pasco County on count I.

II.    Courthouse annex

In count II of the petition, the Clerk sought a declaration of the parties' respective rights and obligations with regard to the funding of the Clerk's court-related functions at the courthouse annex in New Port Richey.  The Clerk argues that the trial court erred in determining that the courthouse annex does not constitute a local requirement as contemplated by article V, section 14(c), and subsection 29.008(2).  We disagree.

Article V, section 14(c), provides in pertinent part that "[c]ounties shall also pay reasonable and necessary salaries, costs, and expenses of the state courts system to meet local requirements as determined by general law."  When section 29.008 was enacted in 2000, it did not define local requirements and merely reiterated the language of the constitutional amendment.  *See* § 29.008(2), Fla. Stat. (2001).  But that changed in 2003 when the legislature amended section 29.008.  *See* ch. 2003-402, Laws of Fla.  And since that amendment went into effect in 2004, section 29.008 has provided in part as follows:

> (2) Counties shall pay reasonable and necessary salaries, costs, and expenses of the state courts system, including associated staff and expenses, to meet local requirements.

> (a) Local requirements are those specialized programs, nonjudicial staff, and other expenses associated with specialized court programs, specialized prosecution needs, specialized defense needs, or resources required of a local jurisdiction as a result of special factors or circumstances. Local requirements exist:

12

1. When imposed pursuant to an express statutory directive, based on such factors as provided in paragraph (b); or

2. When:

a. The county has enacted an ordinance, adopted a local program, or funded activities with a financial or operational impact on the circuit or a county within the circuit; or

b. Circumstances in a given circuit or county result in or necessitate implementation of specialized programs, the provision of nonjudicial staff and expenses to specialized court programs, special prosecution needs, specialized defense needs, or the commitment of resources to the court's jurisdiction.

(b) Factors and circumstances resulting in the establishment of a local requirement include, but are not limited to:

1. Geographic factors;

2. Demographic factors;

3. Labor market forces;

4. The number and location of court facilities; or

5. The volume, severity, complexity, or mix of court cases.

Subsection 29.008(2)(a) instructs that a local requirement exists *either when* it is "imposed pursuant to an express statutory directive, based on such factors as provided in paragraph (b)," *see* § 29.008(2)(a)1, *or when* the circumstances set forth in subsection (2)(a)2 are met.

With respect to an "express statutory directive," the legislature has provided that

[t]he following shall be considered a local requirement pursuant to subparagraph (2)(a)1.:

(a) Legal aid programs, which shall be funded at a level equal to or greater than the amount provided from filing fees and surcharges to legal aid programs from October 1, 2002, to September 30, 2003.

(b) Alternative sanctions coordinators pursuant to ss. 984.09 and 985.037.

§ 29.008(3).  The Clerk has failed to point to an express statutory directive indicating that a secondary courthouse facility, such as the courthouse annex, shall be considered a local requirement for purposes of the constitution and section 29.008, and we have found none.  We are therefore left to consider subsection 29.008(2)(a)2.

Subsection 29.008(2)(a)2 describes alternative circumstances under which a local requirement may come to exist.  However, local requirements under this subsection "must be determined by the . . . method" prescribed by subsection 29.008(2)(c).  But it is undisputed that subsection 29.008(2)(c) has no applicability to this case.  Therefore the trial court correctly determined as a matter of law that the courthouse annex does not constitute a local requirement as contemplated by article V, section 14(c), and section 29.008.  Entry of summary judgment on count II in favor of Pasco County was therefore proper.[5]

III.    Supplemental relief

In count III of its petition the Clerk also sought supplemental relief.  *See* § 86.011(2), Fla. Stat. (2021) ("Any person seeking a declaratory judgment may also demand additional, alternative, coercive, subsequent,

---

[5] In addition to determining that the courthouse annex was not established pursuant to either subsection 29.008(2)(a)1 or subsection 29.008(2)(a)2 and therefore that it did not constitute a local requirement under the constitution or statute, the trial court made an alternative finding that the courthouse annex was not a local requirement as contemplated by the statute based on facts for which there was no evidentiary basis.  But because the trial court entered summary judgment in favor of Pasco County on count II for the independent reason that the circumstances set forth in subsection 29.008(2)(a)1 and subsection 29.008(2)(a)2 had not been met, it is proper to affirm the final summary judgment with respect to this count.

14

or supplemental relief in the same action.").[6]  The Clerk's request for supplemental relief is dependent upon the outcome of her claims in counts I and II.  *See City of Newberry v. Alachua County*, 366 So. 3d 1176, 1179 (Fla. 1st DCA 2023) (explaining that supplemental relief "is ancillary to and dependent upon the existence of a declaratory judgment").  Once a declaratory judgment is entered in favor of the party seeking declaratory relief, that party's request for supplemental relief becomes ripe for determination.  *See McAllister v. Breakers Seville Ass'n*, 41 So. 3d 405, 408 (Fla. 4th DCA 2010).  Because the trial court erred in failing to grant summary judgment in favor of the Clerk on count I, it likewise erred in granting summary judgment in favor of Pasco County on count III to the extent that count III sought supplemental relief related to count I.

IV.   Conclusion

---

[6] We note that section 86.061 directs that "[t]he application [for further relief based on a declaratory judgment] shall be by motion to the court having jurisdiction to grant relief."  Here, the Clerk did not seek supplemental relief by motion but rather included a claim for supplemental relief in her petition for declaratory relief.  On appeal, Pasco County does not contend that the Clerk erred in seeking supplemental relief by petition rather than by motion, nor do we believe that she did.  *See, e.g., Mac Assocs. v. LaMontagne*, 556 So. 2d 460, 461 (Fla. 2d DCA 1990) (relying on the 1987 version of section 86.061, which mirrors the 2021 version of the statute, when stating that supplemental relief should be sought by petition).  We understand that under certain circumstances when a statute (or rule) requires that relief be sought in a pleading, a motion will not suffice.  *See, e.g., Stockman v. Downs*, 573 So. 2d 835, 837-38 (Fla. 1991).  But that is generally due to concerns about proper notice.  And we do not believe any shortcomings with respect to notice exist here where the inverse has occurred—seeking relief in a pleading when the statute calls for a motion.  By including a claim for supplemental relief in the petition for declaratory relief, the Clerk afforded Pasco County more notice than would have been afforded by a motion filed after the initiation of the declaratory relief action.

We affirm the final summary judgment with respect to count II. However, we reverse the final summary judgment to the extent the trial court found in favor of Pasco County on count I and remand for entry of final summary judgment in favor of the Clerk on count I. We also reverse the final summary judgment to the extent the trial court found in favor of Pasco County on the Clerk's claim for supplemental relief related to count I and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

NORTHCUTT and KELLY, JJ., Concur.